UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

In re: **DONALD and MARY ZOMBRO**
Debtor

           Case No: 97-11370-MVB
           Chapter 7

**DONALD and MARY ZOMBRO**
Plaintiff

           AP No: 06-01166-RGM

v.

**SUNTRUST BANK**
Defendant

## MOTION FOR SUMMARY JUDGMENT

## ESTABLISHING DEFENDANT'S LIABILITY FOR $4465.96

Now debtor/plaintiffs Donald Zombro and Mary Allen Zombro, move for Summary Judgment establishing that defendant Suntrust is liable to plaintiffs in the amount of $4465.96; and in support thereof submit the attached memorandum.

           DONALD ZOMBRO
           MARY ALLEN ZOMBRO

           By: /s/Robert R. Weed, Esq.
           Robert R. Weed, Esq.
           Law Office of Robert R. Weed
           7900 Sudley Road, Suite 409
           Manassas, VA 20109
           703-335-7793
           Fax: 703-360-2696
           robertweedlaw@yahoo.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

In re: **DONALD and MARY ZOMBRO**
Debtor

                                              Case No: 97-11370-MVB
                                              Chapter 7

**DONALD and MARY ZOMBRO**
Plaintiff

                                              AP No: 06-01166-RGM

v.

**SUNTRUST BANK**
Defendant

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## ESTABLISHING DEFENDANT'S LIABILITY FOR $4465.96

**Summary**

This is a story of how SunTrust Bank made a demand for payment for a discharged second mortgage debt, coercing payment on a smaller credit card debt, which would also have been discharged in the bankruptcy had it not, prior to the bankruptcy, already been paid.

The Zombros demand repayment of the $4465.96 which was coerced by the actions of SunTrust in violation of the discharge.

**Narrative**

Prior to their 1997 Chapter 7 bankruptcy case, debtors Donald and Mary Allen Zombro had two accounts with Crestar Bank, which later merged into SunTrust. One was a credit card account; the other was the second mortgage on their home which they surrendered to the secured creditor.

Court records show that Crestar Bank was scheduled in the creditor matrix and received notice of the bankruptcy filing and the discharge.

Examining the schedules, Crestar was only scheduled in one place—as the holder of the second mortgage.

Debtors did not schedule the credit card because they had entered into a compromise settlement agreement with Crestar and had paid it. Ten years later they still had copies of the cancelled checks! Those checks are dated 1996; prior to the filing of the 1997 bankruptcy case.

Subsequent to the bankruptcy case, they became home owners again, and in 2005 were planning to sell that home and purchase another.

Their settlement agent handling the sale saw a judgment on the public record. This judgment had been entered in June, 1995, in the approximate amount of $2500.

The closer on the sale, Angela Adkins, contacted SunTrust and SunTrust, in March 2005, faxed a "payoff" for $28,245! This payoff was calculated on the second mortgage account, which SunTrust's own internal records show had been discharged. (We assume SunTrust made a demand on this discharged account because their internal records showed the other account had been paid. SunTrust had reported the second account to the credit bureaus as paid.)

The payment demand for $28,245 led settlement agent to withhold $30,000 at the March 28, 2005, closing. (The closing was March 28, 2005 and the faxed pay off demand is recorded as March 31, 2005. Presumably there was an oral payoff stated prior to the written payoff being faxed.)

The Zombros protested that the second mortgage had been discharged in their bankruptcy. After some back and forth, on May 17, 2005, seven weeks after the closing, SunTrust sent a new letter, saying that the balance—referencing the credit card account—was $6,870.71, and offering to settle for $4,465.96.

Although they had cancelled checks showing that they had paid that smaller debt in 1996, and although the intervening no asset bankruptcy would have discharged that debt had it remained, the Zombros authorized the settlement agent to send the $4,465.96 in order to free the remaining $25,000.00 from escrow.

When SunTrust subsequently mailed them a payment demand for the $28,245, the Zombros sought assistance of counsel.

**Statement of Undisputed Facts**

1. The Zombros filed a Chapter 7 petition in case 97-11370, which was discharged as a no asset case on 6/18/997. See Exhibit 1, Order to Closed Case and Discharge.

2. The clerk of the court mailed a copy of the discharge in Crestar. Exhibit 1.

3. This discharge was noted in the Bank's internal records on June 23, 1997. See Exhibit 2, defendant's exhibit 6 in response to plaintiff's request for production 3.

4. Five years later, in May 2002, SunTrust reported the account to the credit bureaus as a Charged to Profit and Loss, rather than discharged. Exhibit 3, credit report.

5. SunTrust explains they reported the account in 2002 because debtors had made a request or filed a credit reporting dispute. Exhibits 4, 5 and 6, defendant's responses to Requests for Production and Requests for Admission.

6. SunTrust itself, as a mortgage lender, sometimes requires payment on accounts showing Charge Off or Charged to Profit and Loss—which SunTrust says are equivalent terms—as a condition of loan approval. Exhibit 7, SunTrust's response to Request for Admission 9. SunTrust therefore could reasonably foresee that others would pressure the debtors to pay as a result of the credit reporting entry.

7. On March 3, 2005, a call came in about the status of this account. That call caused SunTrust to move the account into "collector queue." Exhibit 8—same as Exhibit 2 above—defendant's exhibit 6 in response to plaintiff's request for production 3.

8. In response to a faxed inquiry from Angela Adkins—the closer for the title company on the Zombros' sale—see Exhibit 10, affidavit of Mary Zombro—SunTrust faxed a "payoff" for $28,245. Exhibit 9—same as Exhibit 8 and 2.

9. $30,000 was withheld at closing. See Exhibit 11, Affidavit of Donald Zombro, and Exhibit 12, HUD 1.

10. On May 15, 2005, SunTrust sent a letter saying that the correct balance was $6,870.71 and offering to settle for $4,465.96. Exhibit 13, SunTrust demand letter.

11. This $6,870.71 was for the credit card account, also an account which had existed prior to the bankruptcy, and which SunTrust had reported to the credit bureaus as paid, zero balance. Exhibit 14, credit report.

12. As evidence that this account had been paid, the Zombros had a copy of the warrant in debt, with notes showing they had reached a settlement agreement with

Crestar, and copies of their cancelled checks evidencing payment. Exhibit 15, Warrant in debt with notes, cancelled checks.

13. Nevertheless, desperate to have access to the remaining $25,000 being held in escrow, the Zombros authorized the settlement agent to pay the $4,465.96. Exhibit 16, same as Exhibit 11, affidavit of Donald Zombro.

14. Five months later, in October 2005, SunTrust contacted the Zombros directly, again demanding payment of the $28,000—oddly $28,214, slightly less than the $28,245 they had faxed to Angela Adkins five months prior.

**Argument**

SunTrust's internal records show that the Zombros second mortgage account had been discharged in the bankruptcy. Nevertheless, they took a series of steps to collect it.

In what they describe as a response to a request or dispute, they reported it as a charge off to the credit bureaus in May 2002. In March 2005, in response to a telephone inquiry, they moved it to collector queue. Later, on March 31, they faxed a "payoff" to the settlement agent. This faxed payoff apparently had been proceeded by an oral statement, because the faxed payoff was three days later than the closing itself, where $30,000 was withheld.

Finally, in October 2005, SunTrust wrote to the Zombros directly demanding payment.

The Zombros succumbed to the pressure being brought to bear on them, authorizing payment of $4465.96.

These activities would have been proper under the prior Bankruptcy Code, where the burden was on the debtor to assert his discharge.

But the discharge injunction was instituted in 1978 precisely to enjoin creditors from "attempting in any way to collect the pre-petition debt" with the goal of preventing this kind of pressure to which "inexperienced, frightened or ill-counseled debtors may succumb." H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 342 (1977) *reprinted in* 1978 U.S.Cong. & Admin.News 5787, 6298.

**Conclusion**

SunTrust violated the discharge injunction by demanding payment of $28,000 on a debt which had been discharged. These demands coerced payment of $4,465.96 on a different debt that had either been paid or was also discharged; the Zombros consented to payment of the $4,465.96 in order to be free of the pressure to pay the $28,000.

That payment of $4,465.96 was the direct result of the SunTrust's repeated violation of the discharge injunction and it is one measure of the damages caused by that violation. Judgment against SunTrust should be entered in the amount of $4,465.96.

    RESPECTFULLY SUBMITTED

                          DONALD ZOMBRO
                          MARY ALLEN ZOMBRO


                          By ___/s/Robert R Weed__

Robert R Weed, VSB 24646
Attorney for Debtor/Plaintiffs
7900 Sudley Road #409
Manassas, VA 20109
703-335.7793.

**Certificate of Service**

I hereby certify that on Sunday, February 11, 2007, I served a copy by
electronic means by electronic means through the ECF system to:

David C. Whitridge
Morris, Schneider & Prior, L.L.C.
1587 Northeast Expressway
Atlanta, GA 30329
770-234-9181 Ext. 1247
770-234-9192 (fax)
ECF_Whitridge@msplaw.com
*Assigned: 11/02/2006*

Office of the US Trustee

Case Trustee

And by email to
Paul Wersant, Esq.
Morris, Schneider & Prior, L.L.C.
<PGWersant@msplaw.com>

                        By ___/s/Robert R Weed__